# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 203

In the Interest of A.I.

Catholic Charities,                                      Petitioner and Appellee

       v.

A.I.,                                                   Respondent and Appellant

## No. 20230311

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED IN PART AND VACATED IN PART.

Opinion of the Court by Jensen, Chief Justice.

Omid Kardoust, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee.

William Woodworth, Bismarck, ND, for respondent and appellant.

**Jensen, Chief Justice.**

[¶1]   A.I. appeals the district court's order continuing her commitment to the North Dakota State Hospital ("NDSH") for a period not to exceed 180 days. She argues the court erred in not ordering a less restrictive alternative treatment as testimony supported A.I.'s needs could be met with a lower level of care. Secondly, A.I. asserts the entry of an order, that indicated a waiver of the continuing treatment hearing filed after a hearing was held, was clearly erroneous. We conclude the court's order to continue her hospitalization was not clearly erroneous, and the court's order following waiver of treatment or continuing treatment hearing, as conceded by both parties, was entered in error. We affirm the court's order for continued treatment and vacate the superfluous order entered in the record at docket entry 43.

I

[¶2]   In May 2023, A.I.'s guardian, Catholic Charities of North Dakota filed a petition for the involuntary commitment of A.I., alleging A.I. was mentally ill and a person requiring treatment. The district court held a treatment hearing and determined A.I. was mentally ill and ordered A.I. to undergo treatment at the NDSH not to exceed 90 days. The order was set to expire on August 22, 2023.

[¶3]   On August 4, 2023, a petition for continuing treatment was filed, alleging A.I. was a person requiring further treatment and that although her needs could be met with a lower level of care, no placement had accepted her. A continuing treatment hearing was held on August 21, 2023. The psychologist who assessed A.I., and a representative from Catholic Charities provided testimony.

[¶4]   At the conclusion of the hearing, the district court issued two orders. The first, located in the record as docket entry 42, titled findings of fact, conclusions of law, and order following treatment or continuing treatment hearing, in which the court ordered A.I. to continue treatment at the NDSH for a period

1

not exceeding 180 days. The court's findings indicate concerns that placing her in a less restrictive environment could place A.I., others, or property at risk for harm. To support its findings, the court referenced A.I.'s history of nonadherence to medical treatment, impulsive behavior, and past incidents that required the assistance of multiple staff to get compliance. The court further found that although a less restrictive program could meet A.I.'s needs, no such program was available.

[¶5] The second order, order following waiver of treatment or continuing treatment hearing, was provided to the district court as a proposed order before the start of the hearing. This order also committed A.I. to the NDSH for a period not to exceed 180 days in addition to indicating "having received an application and order for waiver of hearing . . . ." The State concedes no waiver was filed. At oral argument, the parties agreed the order is duplicative of the order issued in docket entry 42, appears to have been entered in error, and should be vacated.

## II

[¶6] When a person is found to be a person in need of treatment, they have the right to the least restrictive conditions necessary to achieve the purposes of the treatment. N.D.C.C. § 25-03.1-21. This Court has determined:

> To comply with the requirements of N.D.C.C. § 25-03.1-21(1), the district court is required to make a two-part inquiry: (1) whether a treatment program other than hospitalization is adequate to meet the individual's treatment needs, and (2) whether an alternative treatment program is sufficient to prevent harm or injuries which an individual may inflict on himself or others. The court must find by clear and convincing evidence that alternative treatment is not adequate or hospitalization is the least restrictive alternative. In some cases, a reporting doctor may reasonably conclude that less restrictive alternatives to hospitalization simply do not exist. . . . We will not set aside the district court's findings of fact unless they are clearly erroneous. A district court's finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence

2

> to support it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made.

*In re J.S.*, 2006 ND 143, ¶ 6, 717 N.W.2d 598 (cleaned up).

[¶7]   A.I. asserts since there is a less restrictive alternative to her continued placement at the NDSH, the district court determination to extend her commitment was clearly erroneous. Although A.I. could have been placed in a less restrictive facility, the court received testimony that no such facility had accepted A.I. for placement.

[¶8]   In *Interest of J.S.*, 545 N.W.2d 145 (N.D. 1996), this Court affirmed a similar district court's finding. In *J.S.,* the court determined there were no appropriate alternative programs presently available and continued J.S.'s treatment at the NDSH. *Id.* at 148. In *J.S.*, the court was presented with evidence that placement in a less restrictive alternative to hospitalization was a potential option, but that such a placement was not currently available. *Id.* at 147. Finally, the record in *J.S.* reflected that a search for a less restrictive placement was continuing. *Id.* at 148.

[¶9]   Here, the district court heard testimony from the psychologist who assessed that A.I. could be released to a supervised apartment or transitional home, but that no such place was currently available. Additional testimony indicated A.I. had been evaluated for independent living with supportive services and it was determined A.I. was not ready for such a reduced level of care. The psychologist also testified that since no transitional facility was available, A.I. requires continued care with the NDSH until a place with fewer restrictions accepts her. The representative from Catholic Charities testified they have been working to find A.I. a placement since the first month she arrived at the NDSH and are continuing to search for an alternative placement. At the time of the hearing, no alternative treatment option had accepted A.I. for placement. Under these circumstances, the court's finding that a less restrictive alternative to placement at the NDSH was not available is supported by evidence in the record, was not a misapplication of the law, and we are not left with a definite and firm conviction a mistake has been made.

3

We conclude the finding a less restrictive alternative placement is not available is not clearly erroneous.

[¶10] Secondly, A.I. asserts the district court's findings as to why an alternative program was insufficient to prevent harm or injury was not supported by clear and convincing evidence. Specifically, A.I. argues the court's findings related to A.I.'s anxiety and depressed mood, suicidal statements, her belief that events will happen when no events exist, and an inability to care for herself were not supported by sufficient testimony. In summary, she argues she should have been placed into an independent living setting.

[¶11] During the hearing, the psychologist who assessed A.I. testified A.I. was being treated for borderline personality disorder and adjustment disorder with mixed anxiety and depressed mood. He testified staff reported A.I. requires additional treatment to be accepted to a less restrictive treatment setting, in addition to her being "at high risk for seriously harming herself or others if discharged at this time." This report also outlines specific instances in which her behavior would not be suited for a less restrictive treatment setting: "Recent incidents include yelling at staff, throwing her walker at staff, not following basic instructions, and agitation to the point of requiring involuntary intramuscular injections of sedating medication."

[¶12] The psychologist who assessed A.I. also testified concern regarding A.I.'s continued belief in things that are unlikely to happen and indicated A.I. was not to a level where she could live independently. On this record, the district court's finding that a less restrictive alternative to placement at the NDSH was not available, including independent living, is supported by evidence in the record, was not a misapplication of the law, and we are not left with a definite and firm conviction a mistake has been made. We conclude the finding that a less restrictive alternative placement, including independent living, is not available is not clearly erroneous.

## III

[¶13] The district court's finding that no less restrictive alternative treatments were available was not clearly erroneous. Additionally, both parties concede

4

the entry of the superfluous order, order following waiver of treatment or continuing treatment hearing, located as docket number 43, was done in error. We affirm the district court's order for continued treatment and vacate the superfluous order located at docket number 43.

[¶14] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr